|     |                          |                                      |
| --- | ------------------------ | ------------------------------------ |
|     | UNITED STATES DISTRICT COURT |                                  |
|     | DISTRICT OF NEVADA       |                                      |

| Elaine Magpiong,          | 2:17-cv-00255-JAD-VCF           |
| ------------------------- | ------------------------------- |
| Plaintiff                 | **Order Granting Motion to Dismiss** |
| v.                        | [ECF No. 25]                    |
| Superdry Retail LLC, et al., |                              |
| Defendants                |                                 |

Plaintiff Elaine Magpiong's career at defendant Superdry Retail's store in Las Vegas's Grand Bazaar Shops came to an end on June 11, 2015, when she was terminated for purported company-reorganization reasons. She signed a separation agreement, entitling her to a severance package and shielding Superdry from any and all claims, known or unknown, suspected or unsuspected, regardless of whether she discovered new or different facts relating to her employment or termination. Eight months later, Magpiong got word of a lawsuit in New York filed by a former Superdry human resources manager against Superdry. That lawsuit illuminated to Magpiong that Superdry fired her because she is a lesbian, not for innocuous reorganization reasons. So Magpiong sues Superdry, claiming that it discriminated against her based on her sexual orientation, breached the implied covenant of good faith and fair dealing, and fraudulently induced her to sign the claim-barring separation agreement. Superdry moves to dismiss, arguing that Magpiong's fraudulent-inducement claim fails as a matter of fact and law, and thus, the separation agreement is valid, binding, and enforceable and precludes Magpiong's other claims. I agree with Superdry, so I grant the motion and dismiss all of Magpiong's claims with prejudice.

# Background[1]

Plaintiff Elaine Magpiong started working for defendant Superdry in October 2011. She excelled at her job and was eventually promoted to manage one of Superdry's two locations on the Las Vegas strip. She had no disciplinary record, received positive performance reviews, and was considered a "strong performer" by her manager.

At some point in the first half of 2015, Rozalind Stewart, the head of Superdry's US Retail Operations, visited Magpiong's store and met her for the first time. Following that visit, Stewart told Human Resources Manager Pamela Brown that she planned to fire Magpiong because she didn't like how Magpiong walked (particularly because she "swaggered"), she felt that Magpiong's clothing style was "off brand,"[2] and because Magpiong drank energy drinks. Stewart intended to have the store manager at the other Las Vegas strip location—a heterosexual who conformed to female stereotypes—manage both sites, but Brown advised Stewart that her reasons for terminating Magpiong were illegitimate, discriminatory, and illegal. Stewart then attempted to disguise her discriminatory motives and told Brown that she would just fire the other manager as well.

On June 11, 2015, Brown—directed by Stewart—terminated Magpiong, citing "company reorganization." Magpiong signed a broad "Separation and General Release Agreement" that released Superdry from all liability relating to Magpiong's employment and termination, and in exchange, Magpiong received $2,230.77 in severance pay. Apparently, Brown returned to her office in New York and voiced her concerns that the company was violating several employment laws, but her whistleblowing was not appreciated, and she, too, was terminated.

---

[1] At this motion-to-dismiss stage, I accept all of Magpiong's well-pled facts as true and consider them in the light most favorable to her. *See NL Industries, Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). I cite generally to Magpiong's amended complaint (ECF No. 24), its attachments, and the separation agreement (ECF No. 5-2 Exhibit A) for this background section.

[2] Magpiong wore Superdry clothing to work, but she wore clothes from the men's line instead of the women's line. ECF No. 24 at 7, ¶ 49.

About eight months later, Magpiong learned that Brown had filed a lawsuit against Superdry in New York for unlawful employment practices and retaliation. That lawsuit brought to light Stewart's behind-the-scenes motives for terminating Magpiong, so Magpiong filed a claim with the Nevada Equal Rights Commission and, later, this court. Superdry contends that Magpiong is bound by her separation agreement and is in breach of it by maintaining this lawsuit. Magpiong argues that she was fraudulently induced to sign it because, had she known that she was fired for her sexual orientation, she never would've agreed to it.

## Discussion

### A. Motion-to-dismiss standard

Federal Rule of Civil Procedure 8 requires every complaint to contain "[a] short and plain statement of the claim showing that the pleader is entitled to relief."[3] While Rule 8 does not require detailed factual allegations, the properly pled claim must contain enough facts to "state a claim to relief that is plausible on its face."[4] This "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"; the facts alleged must raise the claim "above the speculative level."[5] In other words, a complaint must make direct or inferential allegations about "all the material elements necessary to sustain recovery under *some* viable legal theory."[6]

District courts employ a two-step approach when evaluating a complaint's sufficiency on a Rule 12(b)(6) motion to dismiss. First, the court must accept as true all well-pled factual allegations in the complaint, recognizing that legal conclusions are not entitled to the assumption

---

[3] FED. R. CIV. P. 8(A)(2); *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

[4] *Twombly*, 550 U.S. at 570.

[5] *Iqbal*, 556 U.S. at 678.

[6] *Twombly*, 550 U.S. at 562 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1989)) (emphasis in original).

3

of truth.[7]  Mere recitals of a claim's elements, supported only by conclusory statements, are insufficient.[8]  Second, the court must consider whether the well-pled factual allegations state a plausible claim for relief.[9]  A claim is facially plausible when the complaint alleges facts that allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct.[10]  A complaint that does not permit the court to infer more than the mere possibility of misconduct has "alleged—but not shown—that the pleader is entitled to relief," and it must be dismissed.[11]

Review on a motion to dismiss under FRCP 12(b)(6) is normally limited to the four corners of the complaint.[12]  "If the district court relies on materials outside the pleadings in making its ruling, it must treat the motion to dismiss as one for summary judgment and give the non-moving party an opportunity to respond."[13]  "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment."[14]  And "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may

---

[7] *Iqbal*, 556 U.S. at 678–79.

[8] *Id*.

[9] *Id.* at 679.

[10] *Id.*

[11] *Twombly*, 550 U.S. at 570.

[12] *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).

[13] FED. R. CIV. P. 12(b); *see United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003).

[14] *Ritchie*, 342 F.3d at 908.

be considered in a ruling on a Rule 12(b)(6) motion to dismiss."[15]

**B.    I consider the separation agreement in making my ruling.**

This is Superdry's second motion to dismiss. In its first motion, Superdry argued that Magpiong is bound by the separation agreement, which prevented her from bringing any claims against it.[16] Superdry also argued that, regardless of the separation agreement, Magpiong's claims are barred by the applicable statute of limitations.[17] Magpiong countered that the agreement is voidable because it was induced by fraud[18] and that she is entitled to equitable tolling.[19] I granted the motion in its entirety, but I gave Magpiong an opportunity to amend her complaint to properly plead a fraudulent-inducement claim and specific facts to support her claimed entitlement to equitable tolling.[20]

Now, in this second round of dismissal arguments, Superdry contends that Magpiong fails to sufficiently allege all of the elements of her fraudulent-inducement claim, and that the "fraudulent inducement claim fails as a matter of law [because] it directly contradicts the terms of an express written contract."[21] Superdry also re-urges its equitable-tolling argument.

The parties refer repeatedly throughout their briefs to the Separation and General Release

---

[15] *Branch v. Tunnel*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds in Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

[16] ECF No. 5 at 6–8.

[17] *Id.* at 8–10.

[18] Magpiong's original complaint included one claim for negligent misrepresentation and another claim for intentional misrepresentation and fraud. The original pleading wasn't exactly clear, but I gleaned from it that Magpiong actually intended a fraudulent-inducement claim rather than these other two claims. *See* ECF No. 23 at 5.

[19] ECF No. 23 at 6.

[20] *Id.* at 17.

[21] ECF No. 25 at 2 (quoting *Soffer v. Five Mile Capital Partners, LLC*, 2013 WL 638832, at *9 (D. Nev. Feb. 19, 2013)).

Agreement, which was attached as an exhibit to the first motion to dismiss and is incorporated by reference into this new motion. Because both of Superdry's motions to dismiss focus on the separation agreement, Magpiong had an adequate opportunity to challenge its authenticity. Magpiong does not suggest that Superdry's attachment is anything but a true and accurate representation of the separation agreement that she signed. Because Magpiong refers to this agreement in her amended complaint, I consider it now in ruling on this motion to dismiss without converting this motion into one for summary judgment.

**C.     Superdry's arguments**

Superdry offers multiple arguments for why Magpiong's fraudulent-inducement claim fails. First, Superdry suggests that fraudulent inducement is unavailable as a matter of law where the fraudulent-inducement allegations contradict the terms of an express, written contract. Second, Superdry explains why, on these facts, Magpiong has not pled—and cannot plead—sufficient facts to support the elements of her claim. And third, Superdry contends that an employee who releases unknown claims, regardless of newly discovered different or additional facts, may not use a fraudulent termination *reason* as the basis for a fraudulent-inducement claim.

**1.     The fraud alleged by Magpiong does not contradict the terms of the release.**

Superdry suggests that "a fraudulent[-]inducement claim fails as a matter of law where it directly contradicts the terms of an express written contract."[22] Although Superdry correctly presents the law, its application is flawed. Fraudulent-inducement claims *do* fail as a matter of law when the alleged fraud directly contradicts the terms of an express written contract.[23]

---

[22] *Id.* (quoting *Soffer*, 2013 WL 638832, at *9).

[23] *Soffer*, 2013 WL 638832, at *9; *see also Road & Highway Builders v. N. Nev. Rebar*, 284 P.3d 377, 381 (Nev. 2012) ("[T]he purported inducement cannot be something that conflicts with the Subcontract's express terms, as the terms of the contract are the embodiment of *all* oral negotiations and stipulations." (citing *Tallman v. First Nat. Bank of Nev.*, 208 P.2d 302, 306 (Nev. 2012))).

6

Superdry contends that the alleged fraud—misrepresenting the reason for Magpiong's termination—contradicts the separation agreement's express terms:

> Superdry's alleged misrepresentation regarding the reason for her termination . . . directly contradicts (1) Plaintiff's explicit promise to release any and all claims relating to her termination, whether known or unknown to her at the time of her termination; and (2) her explicit promise that the Release Agreement would remain effective regardless of whether new or different facts came to light with respect to her termination or her released claims.[24]

The alleged fraud does not, however, contradict the terms of the separation agreement. The separation agreement says nothing about why Magpiong was terminated.[25] The agreement simply says that she is terminated without a reason, effective June 11, 2015.[26] Perhaps Magpiong's requested remedy—to rescind the agreement so that she can sue Superdry for sexual-orientation discrimination—contradicts the express terms of the agreement, but the alleged fraud does not.

Superdry's cited cases illustrate this point. In *Road & Highway Builders v. N. Nev. Rebar*,[27] the Nevada Supreme Court considered whether Northern Nevada Rebar (NNR) could assert a fraudulent-inducement claim in order to rescind its contract with Road & Highway Builders (R&H).[28] R&H was the general contractor on a project to build a 2.3-mile portion of the Carson City Freeway.[29] The project called for "more than 3,000 lineal feet of reinforced concrete boxes (RCBs) under the roadway surface in order to drain water."[30] These RCBs came in two

---

[24] ECF No. 25 at 3.

[25] *See generally* ECF No. 5-2 at 4–7.

[26] *Id.* at 4, ¶ 1.

[27] *Road & Highway Builders v. N. Nev. Rebar*, 284 P.3d 377 (Nev. 2012).

[28] *Id.*

[29] *Id.* at 386.

[30] *Id.*

7

different varieties: a ready-made, pre-cast option, and a pour-in-place option.[31]

R&H initially planned on using pour-in-place RCBs, which required approximately 2.7 million pounds of rebar, and began negotiating a subcontract with NNR to supply all 2.7 million pounds.[32] While R&H and NNR were in negotiations, R&H considered using ready-made, pre-cast RCBs instead, which came with the rebar already installed in the RCB.[33] R&H sought approval for the change and continued to negotiate the subcontract without telling NNR of its intent to use pre-cast RCBs.[34] The city approved R&H's change, R&H continued to withhold the change from NNR, and NNR ultimately agreed to the subcontract.[35]

The subcontract required NNR to furnish all labor and materials necessary to fully perform and complete the work—including the 2.7 million pounds of rebar. But the subcontract also allowed R&H to "order additions, deletions or revisions in the Work to be performed by NNR," "make any change, including additions of omissions, in the Work to be performed by NNR under [the] Subcontract," and gave R&H "the absolute right to terminate at any time and for any reason."[36] Tensions apparently flared when NNR discovered that R&H changed its plans and did not require the full 2.7 millions of rebar from NNR because NNR didn't show up for work one day, and R&H sued NNR for breach of contract.[37] NNR counterclaimed for fraudulent inducement alleging that R&H had promised to NNR that it would purchase from NNR the entire

---

[31] *Id.*

[32] *Id.* at 379.

[33] *Id.* 378–379.

[34] *Id.* at 379.

[35] *Id.*

[36] *Id.*

[37] *Id.* at 379–80.

8

2.7 million pounds of rebar.[38]

The Court held that "the purported inducement cannot be something that conflicts with the Subcontract's express terms, as the terms of the contract are the embodiment of *all* oral negotiations and stipulations."[39] The Court went on to explain that the allegedly fraudulent promise to purchase 2.7 million pounds of rebar contradicted the subcontract's express terms that allowed R&H to reduce the amount of rebar that it needed from NNR.[40] Thus, the Court concluded that "NNR's fraudulent inducement claim fail[ed] as a matter of law."[41]

*Soffer v. Five Mile Capital Partners, LLC*[42] is also illustrative. In *Soffer*, Judge Mahan considered whether a plaintiff can bring a fraudulent-inducement claim against a defendant who enters into a pre-negotiation agreement to form a partnership with the plaintiff and maintains the right to "terminate the discussions and/or negotiations at any time, with or without notice, in its sole discretion and with or without cause, without incurring any liability whatsoever on account of such termination."[43] Soffer alleged that the defendants falsely promised to be business partners but actually intended to enter into the pre-negotiation agreement to learn valuable information about a business opportunity and then take the opportunity for themselves.[44] The court held that, "[b]ecause the alleged false promise to become partners is covered by the [pre-negotiation agreement] itself, . . . [the false promise] contradict[s] the terms of the agreement[]

---

[38] *Id.*

[39] *Id.* at 390.

[40] *Id.* at 390–91.

[41] *Id.* at 391.

[42] *Soffer v. Five Mile Capital Partners, LLC*, 2013 WL 638832 (D. Nev. Feb. 19, 2013).

[43] *Id.* at *9

[44] *Id.*

9

'in direct contravention of the [parol evidence] rules,'"[45] and dismissed the fraudulent-inducement claim.[46]

*Road & Highway* and *Soffer* are distinguishable from this case because, in each case, the allegedly fraudulent statement was contradicted by an express, contractual term. But here, the allegedly fraudulent statement that Magpiong was terminated for company reorganization does not conflict with any express term of her separation agreement. So Magpiong is not precluded from raising a fraudulent-inducement claim on this basis.

### 2. Magpiong fails to allege true facts to satisfy the elements of her fraudulent-inducement claim.

The parties agree that the separation agreement bars Magpiong's claims, so Magpiong can proceed in this case only if she can plead sufficient facts to allow for an inference that she has a viable claim to rescind it.[47] Magpion's sole theory is that the contract may be rescinded because she was fraudulently induced to sign it.[48]

To plead a valid fraudulent-inducement claim, Magpiong must specifically allege true facts that allow me to infer that: (1) Superdry made a false representation to her; (2) Superdry knew or should have known that the representation was false; (3) Superdry intended to induce Magpiong with the false representation into signing the agreement; (4) she justifiably relied on

---

[45] *Id.*

[46] *Id.*

[47] *See* ECF No. 26 at 10 ("What Plaintiff seeks is to prove that the Release was procured by fraud and therefore invalidating the Release pursuant to contractual principles. Plaintiff is not introducing the evidence of Defendant's fraud to alter the Release nor is Plaintiff intending to change the terms of the release. Rather, Plaintiff is attempting to prove that the entire contract is void . . . .") (Pl.'s opp'n to def.'s mot. to dismiss).

[48] *Id.*; *see also* ECF No. 24 at 10.

that representation; and (5) Magpiong suffered damages.[49] The parties meaningfully dispute whether elements 3 and 4 are sufficiently alleged.

There are two distinct moments surrounding Magpiong's termination that deserve specific attention: the termination itself and when Magpiong signed the liability release. Magpiong alleges that "Defendant Superdry falsely represented to [her] that she was being *terminated due to* 'company reorganization.'"[50] Although she alleges that, "[i]n light of representing to [her] that she was being terminated due to 'company reorganization,' Defendant Superdry presented Plaintiff a Separation and General Release Agreement with the purpose to induce Plaintiff to consent to a release of all claims against [it]," she further alleges that "[h]ad [she] known that her *termination* . . . was *due to* discrimination against her sexual orientation and her non-conformity to gender stereotypes, she would not have ever signed the Separation and General Release Agreement."[51] Magpiong thus alleges that the fraud was in connection with the termination itself and not in inducing her to sign the form, so she fails to plead the third element of the claim.

Defendants also argue that Magpiong cannot legitimately plead that she justifiably relied on Superdry's misrepresentation because the separation agreement expressly states that it remains "effective in all respects notwithstanding . . . different or additional facts or the discovery of them."[52] The defense suggests that this newly-discovered-facts provision is a stronger version of a no-reliance provision that prohibits reliance on any communication outside of the written agreement to render any provision ineffective.[53] Magpiong counters that "whether reliance is

---

[49] *J.A. Jones Const. Co. v. Lehrer McGovern Bovis, Inc.*, 89 P.3d 1009, 1018 (Nev. 2004).

[50] ECF No. 24 at 9.

[51] *Id.* at 10.

[52] ECF No. 25 at 14; ECF No. 5-2 at 5.

[53] ECF No. 25 at 16 n.10.

11

justifiable is generally a question of fact for the jury."[54]  She also argues that the "newly-discovered-facts provisions [sic] has completely different wording and functions completely differently than that of the [n]o-[r]eliance [c]lauses in Defendant's cited cases," and "[n]owhere in the Release does there contain any clause which [sic] specifically addresses Plaintiff's non-reliance to [sic] Defendant's representations."[55]

The newly-discovered-facts provision fully states:

> Employee acknowledges that Employee may discover facts or law different from, or in addition to, the facts or law that Employee knows or believes to be true with respect to the claims released in this Agreement and agrees, nonetheless, that this Agreement and the release contained in it shall be and remain effective in all respects notwithstanding such different or additional facts or the discovery of them.[56]

Basically, the agreement survives no matter what the facts are. As a practical matter, Magpiong agreed that the facts were of no consequence, so she signed away her right to rely on them, and she cannot now legitimately plead true facts to satisfy the justifiable-reliance element. Fraudulent inducement is thus one of the countless claims, "known or unknown, suspected or unsuspected," that Magpiong released.[57]

I recognize the Catch-22: Magpiong contractually foreclosed herself from pleading all of

---

[54] ECF No. 26 at 10 (citing *Information Systems & Networking Consultants, LP v. Robinson*, 108 F.3d 338 (S.D. Cal. 1996); *Havens v. C & D Plastics, Inc.*, 876 P.2d 435, 447 (Wash. 1994); *Branch Banking & Trust Co. v. Westar Properties*, 2017 WL 1179942, at *5 (D. Nev. Mar. 29, 2017)).

[55] *Id.* at 11.

[56] ECF No. 5-2 at 5.

[57] *See, e.g.*, *Yassan v. J.P. Morgan Chase & Co.*, 708 F.3d 963, 974–75 (7th Cir. 2013) ("Chase may have had ulterior motives for terminating Yassan. But Yassan explicitly released Chase from all tort claims, including fraud. Yassan should have considered the possibility that Chase was lying to him before he signed a release waiving any claims that arose out of Chase lying to him."). Although this Seventh Circuit case is not binding on me, it is consistent with Nevada's broad contract laws, and I am persuaded by it. I discuss Nevada's case law in Section E below.

the elements of her fraudulent-inducement claim, but she claims that she was fraudulently induced to sign the agreement, so she shouldn't be bound by its terms. This brings me back to the third and most critically missing element: Magpiong does not allege facts to show that Superdry's fraud induced her to sign the agreement—she alleges only that the reason for her termination was fraudulent. Magpiong thus fails to sufficiently plead her fraudulent-inducement claim.

### 3. Superdry's argument that a fraudulent-termination *reason* can't serve as the basis for a fraudulent-inducement claim is redundant.

Superdry suggests that it "is an issue of first impression in Nevada . . . whether an employee can rescind an otherwise enforceable release agreement under a fraudulent-inducement theory based solely on the <u>reason</u> given by the employer for the termination" where the employee released unknown claims regarding her employment and termination and agreed that the release would remain effective regardless of newly discovered different or additional facts.[58] Superdry then cites to several cases that reject a fraudulent-inducement claim where the employee released unknown claims and agreed to a no-reliance provision.[59]

This argument is simply a redundant recharacterization of Superdry's insufficient-pleading argument. In each of Superdry's supporting cases, the court held that the plaintiff was either not induced by the fraudulent termination reason to sign the separation agreement[60] or

---

[58] ECF No. 25 (emphasis in original).

[59] *Id.* at 3–4.

[60] *See Yassan*, 708 F.3d at 975 (holding that Yassan did not allege a separate fraud—like "Chase deceiving Yassan about what he was signing—that induced him to sign the agreement); *Chaganti v. Ceridian Benefits*, 2004 WL 1877733, at *4 (N.D. Cal. Aug. 23, 2004) ("While Chaganti alleges fraud, he alleges fraud with respect to the termination of his employment, not with respect to inducement to enter into the Release.").

13

could not have relied on the reason in deciding to sign.⁶¹ Basically, the court held in each case—albeit in different words—that the plaintiff failed to allege a necessary element of the fraudulent-inducement claim. So, having thoroughly evaluated that argument above in Section C(1), I decline to evaluate it again here.

### D. A release of unknown and unsuspected claims does not bar a fraudulent-inducement claim.

Magpiong argues that "cases in the Ninth Circuit support the supposition that 'a release of unknown claims does not bar a claim for fraudulent concealment premised on the assertion that the defendant's misconduct induced the plaintiff into executing the release.'"⁶² I agree that releasing unknown claims does not, in theory, bar a plaintiff from asserting a fraudulent-inducement claim. But as I discussed in Section (C)(2), the only fraudulent representation that Magpiong alleges is Superdry's purported reason for terminating her. That purported reason is not a fraud that *induced* Magpiong to sign the release. If Magpiong could allege a fraud that induced her to sign the agreement, i.e. that Superdry deceived her about what she was signing or that Superdry forged her signature, then she could satisfy the third fraudulent-inducement element. So, releasing unknown claims does not foreclose Magpiong from raising a fraudulent-inducement claim in theory, but, after two trips to the drawing board with this complaint, it appears that she cannot allege facts to show that she was induced into the separation agreement by fraud.

---

⁶¹ *See Pallonetti v. Liberty Mut.*, 2011 WL 519407, at *9 (S.D.N.Y. Feb. 11, 2011) ("[The] integration clause forecloses her claim that she 'justifiably relied' upon a representation that does not appear within the four corners of the Agreement."); *Claxton v. Bowes*, 2013 WL 1290806, at *4 ("[T]he Court finds that the no-reliance clause in the Agreement renders any reliance by Plaintiff [on her employer's representations that she was being terminated because the company was eliminating her position] unreasonable as a matter of law.").

⁶² ECF No. 26 at 7 (quoting *Burton Way Hotels, Ltd. v. Four Seasons Hotels, Ltd.*, 2012 WL 12883616, at *13 (C.D. Cal. Feb. 23, 2012)).

1  **E.    Nevada enforces liability releases of unknown claims.**

Magpiong also argues that, according to the Ninth Circuit in *Matsuura v. Alston & Bird*,[63] "[a] person cannot release a claim which he has no knowledge, and of existence of which he has been fraudulently kept in ignorance."[64] But that case applies Delaware law,[65] which differs from Nevada law.[66] Unlike Delaware, Nevada enforces contractual releases of unknown claims.[67] So the fact that Magpiong released Superdry from liability for unknown claims does not render the separation agreement unenforceable.

---

[63] *Matsuura v. Alston & Bird*, 166 F.3d 1006, 1011 n.11 (9th Cir. 1999) (citing 66 Am. Jur. 2d Release § 30 (1973)).

[64] ECF No. 26 at 7 (quoting *Matsuura*, 166 F.3d at 1011 n.11 (9th Cir. 1999) (citing 66 Am. Jur. 2d Release § 30 (1973))).

[65] *Matsuura*, 166 F.3d at 1007 ("We conclude that under Delaware law, which governs, defrauded tort plaintiffs may stand by their settlement agreements and institute an independent action for fraud . . . .").

[66] The parties don't dispute that Nevada contract law controls, and the separation agreement has a Nevada choice-of-law provision. *See* ECF No. 5-2 at 6 ("This Agreement shall be governed by and interpreted in accordance with the laws of Nevada without regard to rules governing conflicts of laws.").

[67] *See, e.g.*, *In re Amerco Derivative Litigation*, 252 P.3d 681, 693 (Nev. 2011) (upholding a settlement agreement that releases claims "that have been or that could have been asserted in the Litigation or in the securities actions with which the Litigation is consolidated" including claims that "Plaintiff does not know or suspect to exist in his, her or its favor, or derivately in favor of AMERCO, at the time of the release."); *Von Zehner v. Truck Ins. Exchange*, 659 P.2d 879, 881–82 (Nev. 1983) (enforcing a settlement agreement that released "all claims, known or unknown"); *Igert v. State Farm Mut. Auto. Ins. Co*, 533 P.2d 1365, 1366 (Nev. 1975) (enforcing an agreement that released "all claims under the policy because of bodily injuries known and unknown").

## Conclusion

Accordingly, IT IS HEREBY ORDERED that Superdry's motion to dismiss **[ECF No. 25] is GRANTED.** This case is **DISMISSED with prejudice**. The **Clerk of Court** is directed to **ENTER JUDGMENT accordingly and CLOSE THIS CASE**.

DATED: January 17, 2018.

_____
U.S. District Judge Jennifer A. Dorsey